IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SHERRIE HECKENDORN, | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 06-1216-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Martin R. Cohen
P.O. Box 1229
4040 Douglas Way
Lake Oswego, Oregon  97035

Linda S. Ziskin
3 Monroe Parkway, Suite P, PMB#323
Lake Oswego, Oregon  97035

       Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

Terrye E. Shea
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Sherrie Heckendorn brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner.

## BACKGROUND

Heckendorn protectively filed applications for DIB and SSI on May 14, 2001, alleging disability beginning October 1, 1999.  Tr. 34, 126.  In order to be entitled to DIB, she needed to show disability on or before June 30, 2003.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Heckendorn, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ").  On September 26, 2003, the ALJ issued a decision finding that Heckendorn was not disabled within the meaning of the

Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

Heckendorn appealed the decision to this court. The Honorable Ancer L. Haggerty reversed and remanded for further proceedings, instructing the ALJ to credit as true plaintiff's subjective complaints about her pain and functional limitations. Heckendorn v. Barnhart, CV 04-818-HA at 9 (D. Or. Apr. 25, 2005). Even crediting plaintiff's testimony as true, Judge Haggerty recognized that the record needed to be more fully developed. Specifically, he identified the following items to be developed: (1) whether plaintiff needed to recline every two hours for a one-half hour period; (2) whether plaintiff must be able to walk at will; and (3) whether plaintiff is unable to concentrate for more than six hours per day. Id. at 12.

On remand, Heckendorn, represented by counsel, appeared and testified before the ALJ on January 24, 2006. On March 21, 2006, the ALJ issued a partially favorable decision, finding Heckendorn disabled as of December 31, 2004. The decision became the final decision of the Commissioner when the Appeals Counsel declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I.  Heckendorn's History

Plaintiff was 51 years old at the time of the first hearing and 54 years old at the time of the second hearing. She graduated from high school. Plaintiff has worked as a food server, a cashier in a video store and a dry cleaning store, a receptionist, a clerical worker for an employment agency, a long distance operator, and a day care worker for her grandson.

In her Disability Report, dated July 25, 2001, plaintiff stated that she was unable to sit, stand or walk for extended periods of time. She had trouble using her hands, and she explained that she experiences pain every day. Her pain increases with activity. She testified at the first hearing that her hands swell up when she uses the computer, and that she left her job as a receptionist in March 2001 due to her medical condition. She worked for her daughter at the video store from March 2001 until June 2001, but her daughter had to terminate plaintiff's employment because plaintiff could not bend down to put videos away.

Plaintiff was diagnosed with rheumatoid arthritis, fibromyalgia, hepatitis C, degenerative disc disease, and depression. Her medical record from July 10, 2001, show pain and swelling of the fingers in both hands and incomplete grip strength. Her records from August 15, 2001, show pain in her hands, wrists, and knee. Rik Lounibos confirmed in January of 2002 that plaintiff's "history and exam are consistent with a diagnosis of fibromyalgia." Tr. 302. In addition, a February 2002 MRI of plaintiff's cervical spine revealed disc protrusion to the right of the spinal cord on C4-5, and degenerative changes at C5-6. Similarly, a March 2002 CT scan showed degenerative disc disease with disc narrowing and moderate spinal stenosis at L4-5. The same

scan demonstrated marked degenerative disc disease with disc narrowing and moderate to marked right-sided neural foraminal narrowing at L5-S1.

In October of 2003, Tu Pham, M.D. wrote a letter explaining that plaintiff suffers from rheumatoid arthritis and fibromyalgia "which cause intermittent flare-ups in which she has increased muscle and joint pain." Tr. 15. Dr. Pham also noted that plaintiff suffered from C4-5 spinal stenosis and experienced weakness and numbness in her arms and legs.

In April of 2004, Kim A. Wayson, M.D. reported to plaintiff that a March 2004 myelogram and CT scan showed no evidence of significant pathology and nothing that would benefit from surgery. Plaintiff did have narrowing in the lumbar spine that could impinge one of the nerves going to her legs, but nothing that would benefit from surgery. Plaintiff also met with Jeanine Sommerville, MD, who explained Dr. Wayson's conclusion to plaintiff. Dr. Sommerville explained that Dr. Wayson believed that while plaintiff had degenerative changes in the cervical spine and a pinched nerve in the lumbar region, she would have more problems if she underwent surgery. Plaintiff understood Dr. Sommerville and "recognizes that she will have chronic pain. She is interested in pain management." Tr. 672. Dr. Sommerville prescribed methadone for plaintiff due to her "long term need for medication." Tr. 674.

Plaintiff complained of depression during an April 2004 appointment with Ralph Bramucci, PhD. Plaintiff's depression was compounded by her husband's abusive behavior toward her.

During a May 2004 appointment, plaintiff reported back pain, joint pain, muscle weakness, stiffness, arthritis, sciatica, leg pain at night and leg pain with exertion, as well as depression and anxiety. Dr. Sommerville noted that plaintiff had been compliant and going to

Page 7 - OPINION AND ORDER

physical therapy and counseling for her depression and marital problems. Plaintiff was directed to a pain clinic.

During a June 2004 appointment, plaintiff continued to complain of pain, and informed her doctor that she had ceased physical therapy because it made the pain worse. She informed her doctor that the methadone was helpful.

Plaintiff was tearful during appointments in August, September and October, and she was prescribed wellbutrin. During a November 2004 appointment, plaintiff labeled her pain as 6 out of 10, with 10 being the worst. She reported that she experiences pain to higher degree than her current dose of methadone can control, but if she doubles her dose she feels better. She was not experiencing depression–she was feeling "up beat currently." Tr. 638. Geraldine Mournian, M.D. agreed with plaintiff's increase in pain medication, and referred her to physical therapy for evaluation of her gait and balance, and fitting her with a crutch because she was leaning so hard on her cane that she was breaking the skin on her right hand.

II.     The ALJ's Decision

The ALJ concluded that plaintiff's cervical and lumbar degenerative disc disease, rheumatoid arthritis, and fibromyalgia were severe impairments. Nevertheless, he concluded that plaintiff could perform sedentary work up until December 31, 2004. He opined that before that date, plaintiff was precluded from using ladders, ropes or scaffolds, and was limited to only occasional stooping, kneeling, crouching and crawling. She was also limited to only occasional use of her upper extremities and was precluded from performing work above shoulder level. Beginning on December 31, 2004, however, plaintiff would miss two or more days of work a

month due to her symptoms, and needed the option of changing her position at will between sitting, standing and walking.

As a result, before December 31, 2004, while the ALJ believed plaintiff could not perform her past relevant work, he opined that she could work as an appointments clerk.

The ALJ stated plaintiff's age as 47 at the time of her alleged onset date of October 1, 1999, and as a result determined that transferability of job skills was not material to the determination of disability prior to December 31, 2004.

## DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds. Plaintiff suggests that the ALJ may have erred in his listing determination, and asserts that the ALJ did not comply with Judge Haggerty's instructions on remand. She also challenges the ALJ's determination that given her combination of impairments, and without a finding of transferable skills, plaintiff can perform the job of appointments clerk.

I.   Listing Determination

Plaintiff "reserves" the argument in a footnote that her bilateral hand problems may equal a listing. She indicates she may raise this argument in a reply brief. In her reply, she states that she simply wished to preserve the issue for appeal and bring the issue to the court's attention without indicating whether she now withdraws the argument. In an abundance of caution, I will address the argument.

Plaintiff bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff presents no theory about how her

Page 9 - OPINION AND ORDER

impairments are equal to any listing. The ALJ thoroughly analyzed the medical evidence and made the determination that none of plaintiff's impairments met or equaled a listing. Accordingly, I find the ALJ did not err in his listing determination.

II.     Judge Haggerty's Remand Order

Plaintiff argues that the ALJ neglected to credit as true plaintiff's allegations of pain and functional limitations, as Judge Haggerty instructed the ALJ to do. Additionally, plaintiff argues that the ALJ arbitrarily chose to find plaintiff disabled as of December 31, 2004, without explaining on what basis he made that decision.

Judge Haggerty, while directing the ALJ to credit plaintiff's testimony as true, identified a number of items that needed to be developed further. Specifically, he questioned whether plaintiff needed to recline every two hours for a one-half hour period, whether plaintiff must be able to walk at will, and whether plaintiff is unable to concentrate for more than six hours per day.

The ALJ concluded that, after December 31, 2004, plaintiff needed to walk at will and that plaintiff "would not be able to stand for the length of time required to perform most light exertion level jobs." Tr. 381. He came to this conclusion "based on a review of all of the evidence–including testimony at the hearing[.]" Tr. 381. He did not address plaintiff's claim that she had difficulty concentrating.

Furthermore, the ALJ never explained why he chose December 31, 2004 as the onset date for plaintiff's disability. In his decision, the ALJ noted that plaintiff had worked part-time, temporary jobs. The last part-time job she had was as a day care worker for her grandchild, which she did until July 7, 2001. He also identified a number of inconsistencies in her testimony

Page 10 - OPINION AND ORDER

during the first hearing, particularly regarding her abilities and limitations, but all of the instances involve incidents from 2002. The ALJ also noted Dr. Wayson's April 2004 letter to plaintiff in which he described the results of a CT scan as mild degenerative disease, but not recommending surgery. The ALJ neglected to refer to Dr. Sommerville's report of the same time that without a surgical solution plaintiff would suffer from chronic pain and that she needed to learn pain management skills.

The ALJ also summarized the testimony at the January 24, 2006 hearing, noting that plaintiff had made no attempt to work since the prior hearing, which was on May 22, 2003. He reported that plaintiff had been making jewelry since January 2005; she had been making earrings and necklaces for several hours a day with half hour breaks in between. He noted that the last time she used a computer was three years ago, which would have been in 2003. She testified that she lived alone, and her adult children who live nearby helped her with the household chores. She stopped driving in February 2002. There were no new medical opinions. Nothing in this summary explains why December 31, 2004 is the magic date.

The Commissioner characterizes plaintiff's January 2006 testimony as "additional hearing testimony regarding her additional limitations–since January 2005[,]" thereby supporting the ALJ's conclusion that plaintiff became disabled as of December 31, 2004. D.'s Mem. at 10. Nothing in the testimony, however, implies that the ALJ was concerned about plaintiff's additional limitations since January 2005. In fact, portions of plaintiff's testimony point to an earlier onset date. Plaintiff testified that her neck pain had worsened in the last two and a half to three years, which would be 2003 to the middle of 2004. In addition, she testified that somebody else had done the grocery shopping for her since 2003.

In the medical evidence, the MRI and CT scan in February and March 2002 showed degenerative disc disease, and Dr. Pham opined in October of 2003 that plaintiff suffered from rheumatoid arthritis and fibromyalgia. Furthermore, as I mentioned above, in April of 2004, Dr. Sommerville explained to plaintiff that surgery was not an option to correct the pain, and plaintiff understood she would continue to suffer from chronic pain. The records throughout 2004 show that plaintiff continued to suffer from pain and the onset of depression.

Finally, plaintiff's father submitted a letter on her behalf on June 28, 2004, in which he stated that plaintiff had been experiencing "debilitating pain, worsening arthritis and severe back problems." Tr. 471. He reported that these limitations affected her ability to do chores around the house, do errands and participate in family events. He also stated that he had been supporting her for the last two years.

Given the utter absence of anything in the record pointing to December 31, 2004 as the onset date, and much evidence indicating an earlier onset date, combined with the ALJ's failure to explain why he chose December 31, 2004, I must conclude that the ALJ failed to comply with Judge Haggerty's remand order.

III.     Residual Functional Capacity

Plaintiff challenges the ALJ's conclusion that given her combination of impairments, and without a finding of transferable skills, plaintiff can perform the job of appointment clerk.

The ALJ found that before December 31, 2004, plaintiff could perform sedentary work. Plaintiff, however, was precluded from using ladders, ropes or scaffolds, and was limited to only occasional stooping, kneeling, crouching and crawling. She was also limited to only occasional use of her upper extremities and was precluded from performing work above shoulder level.

Beginning on December 31, 2004, plaintiff would miss two or more days of work a month due to her symptoms, and needed the option of changing her position at will between sitting, standing and walking.

As a result, before December 31, 2004, the ALJ concluded plaintiff could not perform her past relevant work, but could work as an appointment clerk.

The ALJ's conclusion is flawed for a number of reasons. First, because he failed to explain his conclusion about why December 31, 2004 is the onset date of plaintiff's disability, it is unclear why, as of that date, plaintiff will miss two or more days of work a month and why she now needs the option of changing her position at will. These additional limitations preclude her from performing other work in the national economy.

Second, the ALJ incorrectly identified appointment clerk as a sedentary job that plaintiff could perform prior to December 31, 2004. The record does not support his finding. The Vocational Expert ("VE") initially testified that plaintiff could perform the job of appointment clerk. Plaintiff, however, is limited to only occasional use of her upper extremities, and the VE acknowledged that the DOT for appointment clerk indicates the job requires frequent reaching and handling. The VE testified as follows:

> [Y]ou know the DOT describes the appointment clerk as, as frequent reaching and handling but you know I'm not sure the amount of reaching and handling in that job typically [sic]. Positions such as telemarketer, which traditionally requires much less physical activities is still described in the DOT as in excessive [sic] of occasional.

Tr. 835. The VE did not explain in a coherent fashion why plaintiff could perform the job of appointment clerk given her limitation on using her upper extremities. The VE also testified that

plaintiff could perform the job of information clerk, but the ALJ did not include this finding in his decision.

Finally, and most importantly, the Commissioner concedes plaintiff turned 50 years old in 2001, and was 53 prior to December 31, 2004.  Accordingly, plaintiff is a claimant approaching advanced age.  A claimant approaching advanced age with severe impairments, who cannot perform skilled or semi-skilled past relevant work, is presumptively disabled if she is limited to sedentary work.  Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app.2, Rule 201.14.  This presumption, however, does not apply if the claimant is found to have transferable skills.  Id. at Rules 201(g) and 201.15.

Here, the ALJ confirmed that plaintiff cannot perform her past semi-skilled work, and is limited to sedentary work, but determined that transferability of job skills was not material to a determination of disability prior to December 31, 2004.  Specifically, the ALJ found,

> Due to the claimant's age [47 at the time of her claimed onset of disability], transferability of job skills is not material to the determination of disability prior to December 31, 2004.  Beginning on that date, the claimant has not been able to transfer any job skills to other occupations (20 CFR 404.1568 and 416.968).

Tr.382.

The Commissioner concedes that this finding is erroneous.  Nevertheless, the Commissioner suggests that the error is harmless because the underlying record supports a finding that plaintiff had acquired job skills transferable to the semi-skilled job identified by the VE.

Page 14 - OPINION AND ORDER

During the hearing, the ALJ and the VE engaged in the following colloquy:

ALJ: Are there any skills that one would acquire from any, any of the past work that Ms. Heckendorn did that would be readily transferrable to either the information clerk or the appointment clerk?

VE: Yes. Her position as a receptionist is really very, you know very transferable to that job as, as her, as long distance operator. I mean these are, you know, answering questions from the public, dealing with the public, minimal documentation and would be very similar and less, requiring less skill than receptionist.

Tr. 835-36.

I agree with plaintiff. Although one could conclude from the underlying record that the plaintiff's past relevant work provided transferable job skills to other work in the national economy, the ALJ neglected to make this finding in his decision. Accordingly, it is not clear from the record that the ALJ accepted the VE's analysis of transferability of skills. In sum, the ALJ's denial is not supported by substantial evidence and is not based on correct legal standards.

IV.     Reverse and Remand for Further Hearing

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id.

Since this case has already been returned to the ALJ once before, plaintiff asks that the case be remanded for a finding of disability as of her 50th birthday–June 4, 2001. I agree with plaintiff that the Commissioner has already had an opportunity to evaluate Heckendorn's applications and has failed. Heckendorn's applications have been pending since May of 2001. The ALJ failed to provide legally sufficient reasons for rejecting evidence demonstrating plaintiff's disability prior to December 31, 2004, and as a result the ALJ failed to include all of plaintiff's limitations in the hypothetical questions he posed to the VE. Accordingly, I credit plaintiff's subjective testimony as true, requiring the ALJ to find plaintiff disabled. I find the record is complete, and there are no outstanding issues to justify remanding the matter for further proceedings. I remand for a finding of disability from June 4, 2001.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this       19th           day of March, 2008.

    /s/ Garr M. King
Garr M. King
United States District Judge